# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

№ 24-CV-4664 (RER) (LB)

———————————

LAURA SCHMIT, *ET AL.*[1]

VERSUS

ED COX, *ET AL.*

———————————

**MEMORANDUM & ORDER**

August 15, 2024

———————————

**RAMÓN E. REYES, JR., U.S.D.J.:**

The Court assumes familiarity with the factual background and procedural history established in the related matter regarding Cara Castronuova's petition for access to the ballot in the New York State Senate Republican Primary. ("*Castronuova* Action"); *see* Order Denying Preliminary Injunction, *Castronuova, et al. v. Cox, et al.*, No. 24-CV-2428 (RER) (LB), (E.D.N.Y. May 9, 2024), ECF No. 50 ("PI Op."). In this case, Laura Schmit, Ms. Castronuova, and 67 other named plaintiffs (together, "Plaintiffs"), claim their

———————————

[1] The named Plaintiffs in this action are: Adam Waldman; Adele Sodermann; Alexandra E. Rigas; Angela Seamen; Anna Brouker; Anne Wynne; Anthony Tolve; Aura Moody; Cara J. Castronuova; Celina Icahn; Charlene Spinelli; Chris Cedeno; Christopher Sean Wright; Craig Melzer; David Rem; Deb Fleury; Derrick Steven Gibson; Edmund D. Wallace, II; Elaine Benjamin; Elena Chin; Ernie Maldonado; Fang Fang Meng; Felipe Cuza; Francis O'hara; Frank Percoco; Heathermarie Conway; Hector Gavilla; Holly Gruskay; James Coppola; James Wilcox; Jane Wernikowski; Janet Thomas; Jay M. Weinstein; Jesus Nieves; John A. Tabacco, Jr.; John Gavin; Jonathan F. Frick; Jonathan Haar; Jose Narvaez; Joseph Concannon; Joseph Larkin; Judy Lombardiov; Keion Marshall; Kera Ellis; Kimberly Sabbagh; Laura Schmit; Lisa Bagnasco; Lois Giambrone; Lynne Simmons; Marisol Espada; Mark Chronowitz; Mary Weiss; Melissa Locurto; Patrice Cardone; Patricia I Kelley; Patrick Wynne; Patti Serrao; Phil Orenstein; Randy L. Ireland; Rong Liu; Sandra J. King; Steven Schwartzberg; Susan Caddoo; Suzanne Chronowitz; Taisha Parrott; Tavia Trusch Mellado; Teresa M. Helfrich; Tina Ryan; and Wendy Yao. (ECF No. 1 ("Compl.")).

constitutional rights were violated because they were not able to cast write-in ballots in the June 25, 2024 New York Republican Primary for United States Senator (the "Primary"). (Compl. ¶¶ 1–11). Plaintiffs seek various forms of relief, including the scheduling of a new primary. (Compl. ¶ 48). After carefully reviewing the record, and for the reasons set forth herein, Plaintiffs' requests for injunctive relief are denied and Defendants' motions to dismiss are granted with prejudice.

## **BACKGROUND**

I.      Factual Background

Plaintiffs are voters that intended to cast write-in ballots in favor of Cara Castronuova in the Primary. (Compl. ¶¶ 1, 5–11). Ms. Castronuova has signed onto this action as a voter as well. (*Id.*) Many of the other Plaintiffs are those who supported Ms. Castronuova's senate campaign and collected signatures for her throughout New York State. (*Id.*) Michael D. Sapraicone was chosen by the Republican Committee on February 22, 2024 as the Republican party-designated candidate for the Primary, which ensured that either: (1) his name would appear on the Primary ballot if others were successful in challenging him, or (2) he would become the Republican nominee if the Primary was unchallenged. (*See* ECF No. 11 ("Riley Decl.") ¶¶ 3, 4, 12). Ms. Castronuova and one of her supporters, John Tabacco, filed suit seeking placement of Ms. Castronuova's name on the ballot alongside Mr. Sapraicone. (*See gen.* PI Op.; *see also* ECF No. 11 at 3, n. 1).[2]

---

[2] The Court assumes familiarity with the facts of that case as described in the PI Opinion.

As relevant here, the parties to the Castronuova Action participated in a hearing before the undersigned on April 10, 2024. (ECF No. 10, Ex. 1 ("Tr.")). Ms. Castronuova, Mr. Tabacco, legal representatives of the New York State Republican Committee ("NYRC" or "Committee") and New York State Board of Elections ("NYSBOE") appeared. (Tr. at 2–3). Many of Ms. Castronuova's supporters attended. (Tr. at 60:5–12). When ascertaining information about the procedures that were available to a candidate seeking to run for Senate, the Court asked, "Is there going to be a write-in? A place for a write-in candidate. I know there is a whole petition process for that, I think." (Tr. at 31–41). Counsel for the NYS Defendants responded, "I'm not prepared to speak today on the process for writing in names to the ballot. That's something I can certainly go back and get and submit a letter, if that would be helpful." (Tr. at 41:6–9). Later, while discussing the challenges in successfully petitioning for ballot access, Mr. Tobacco acknowledged that "if there's only one candidate in the primary, there's no box on there for a write-in candidate." (Tr. at 62:6–8). Counsel for the Committee also noted "it's our understanding that voters may write in 'Ms. Castronuova.' It's only presidential elections where there's write-in requirements." (Tr. at 63:11–12).

As of April 10, two other candidates, like Ms. Castronuova, had filed a petition to place their name on the ballot for the Primary. (ECF No. 9 ("NYS Mot.") at 16, n. 5; ECF No. 11 ("Riley Decl.") ¶ 12). These other petitions, also like Ms. Castronuova's, had not yet been denied or invalidated. (*Id.*) At the hearing on April 10, the Court denied the plaintiffs' request for emergency relief in the form of a temporary restraining order and granted the parties leave to file briefing in support of or against a preliminary injunction. (Tr. at 68:10–72:18).

After carefully considering the parties' arguments, the facts, and the applicable law, on May 5, 2024, the Court denied the request for a preliminary injunction. (PI Op. at 1–2). In dicta, the Court described the various procedural options Ms. Castronuova had available to her, over the course of many months preceding the PI Opinion to attempt to run for Senate. (PI Op. at 3–5, 29). It was noted therein that Ms. Castronuova could have petitioned for a write-in and campaigned to have her supporters write her in at the Primary. (PI Op. at 5 ("there are many opportunities for a candidate to establish they have the support of potential voters in running for the Senate seat. Ms. Castronuova has taken some, but not all, of the steps in the process outlined above.")) It was also noted that Ms. Castronuova could, as of the April 10 hearing, "campaign for the election of Ms. Castronuova in the Primary," and her supporters "may indeed write her name in." (PI Op. at 29).

The deadline for filing an "opportunity to ballot" ("OTB") petition was the next day, April 11, 2024. (Riley Decl. ¶ 9 (citing New York Election Law ("NYEL") § 6-164)). Regardless of whether any designating petitions successfully placed a challenger's name next to Mr. Sapraicone's on the ballot, a timely and successful OTB petition would have resulted in the Primary being held in every district and the ballots including a write-in space. (Riley Decl. ¶¶ 2–4 (citing NYEL § 6-166)). However, no such OTB petitions were filed by Ms. Castronuova, or anyone else. (Riley Decl. ¶¶ 11–13).

If the petitions of any candidates wishing to run against Mr. Sapraicone, including Ms. Castronuova's, had been successful, then a contested primary would have been held on June 25, 2024 in every district, and ballots would have included a space for a write-in option. (Riley Decl. ¶¶ 3–4, 11). However, the petitions brought by Ms. Castronuova and

others proved to be unsuccessful, and the Primary was uncontested. (Riley Decl. ¶ 12). Because the Primary was uncontested, and no OTB petition was filed, June 25 came and went without a Primary. (Riley Decl. ¶¶ 12–13). In the time between the April 10 Hearing and June 25, however, Ms. Castronuova and her supporters mistakenly believed that the Primary would go forth and include a write-in space, despite the prerequisite procedures having not been met. (Riley Decl. ¶¶ 12–13; Compl. ¶ 25–27). Several of Ms. Castronuova's supporters appeared at polls and attempted, unsuccessfully, to cast write-in ballots in her favor. (Compl. ¶¶ 25–27).

Plaintiffs, purporting to proceed as a class, filed their Complaint *pro se* against Ed Cox as representative of the Committee, several commissioners of the NYSBOE,[3] Letitia James as the Attorney General for the State of New York, and Michael D. Sapraicone as the "Ballot Access Candidate for Republican Party" (together, "Defendants") on July 2, 2024. (Compl. ¶¶ 1–2, 9–11). In the Complaint, Plaintiffs seek the following declarations: (1) "all necessary parties" have been noticed; (2) eligible voters had the right to vote for Ms. Castronuova in the Primary; and (3) NYSBOE violated NYEL §§ 1-104(10) and 7-102 by "failing to print an official ballot and hold a Primary Election." (Compl. ¶ 48). Plaintiffs also seek injunctive relief: (1) preventing Defendants from "certifying any results in the" Primary held on June 25, 2024; (2) resetting a new primary for September 10, 2024; and (3) issuance of ballots for a new primary with Ms. Castronuova's name or a write-in space as options for voters. (Compl. ¶ 48).

---

[3] The NYSBOE commissioners named are Henry T. Berger, Perter S. Kosinski, Essma Bagnuola, and Anthony J. Casale (along with Letitia James, "NYS Defendants").

Plaintiffs also filed a proposed Order to Show Cause. (ECF No. 2). On July 3, 2024, the Court issued a modified Order to Show Cause, requiring Defendants to show "in writing why an Order should not be made and entered preliminarily restraining the Defendant Commissioners of the New York State Board of Elections . . . from certifying any results in the Republican Primary Election for the Public Office of United States Senator held on June 25, 2024." (ECF No. 6).

On July 12, 2024, the NYS Defendants opposed Plaintiffs' request for a Preliminary Injunction and moved to dismiss the Complaint. (NYS Mot.) The Committee filed a letter joining the NYS Defendants' motion to dismiss in full and supplied additional details by letter. (ECF No. 15 ("NYRC Mot.")).

Plaintiffs were ordered to respond to the NYS Defendants' and NYRC Defendants' motions to dismiss by July 31, 2024. (ECF No. 16). Plaintiffs were also ordered to file an amended complaint by July 31, 2024, to provide signatures for individuals named in the caption of the Complaint that did not sign it. (ECF No. 17). Several Plaintiffs filed affidavits indicating their intent to join the action as individuals by providing their contact information. (*See* ECF Nos. 19, 21–29, 37–43). Some of these affidavits included information in support of the Complaint. (*Id.*) Plaintiffs also filed letters and declarations regarding the merits of their case and in opposition to the motions to dismiss. (ECF Nos. 19, 21, 30, 31). As of the date of this Order, many of the Plaintiffs listed in the Complaint have yet to sign on to the Complaint or provide any contact information.[4] Defendant

_____

[4] This includes the following individuals: Adam Waldman; Anna Brouker; Anne Wynne; Anthony Tolve; Celina Icahn; Craig Melzer; David Rem; Edmund D. Wallace, II; Elaine Benjamin; Fang Fang Meng; Francis O'hara; Heathermarie Conway; Jane Wernikowski; Janet Thomas; John Gavin; Jose Narvaez; Joseph Concannon; Joseph Larkin; Judy Lombardiov; Keion Marshall; Kimberly Sabbagh; Lisa Bagnasco; Lois

Micheal D. Sapraicone has also not appeared in this action. Plaintiffs have not yet filed proof of service upon Mr. Sapraicone, though they have until September 30, 2024 to do so. (*See* ECF No. 17).

The general election will be held on November 5, 2024. (Riley Decl. ¶¶ 15–16). Pursuant to New York Election Law ("NYEL") § 7-104, voters will be able to write-in Ms. Castronuova's name, or any other name, when they cast their ballots. (Riley Decl. ¶¶ 15–16).

**DISCUSSION**

I.      Standards of Review

Pleadings submitted by *pro se* parties are to be construed liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191–93 (2d Cir. 2008); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Plaintiffs proceeding *pro se* are not capable of representing other parties, however, and cannot serve as class representatives. *See, e.g., Reynolds v. Mercy Inv. Servs., Inc.*, No. 24-CV-2636 (NJC) (JMW), 2024 WL 1740870, at *5 (E.D.N.Y. Apr. 23, 2024) (quoting *Iannaccone v. Law*, 142 F. 3d 553, 558 (2d Cir. 1998)); *see also* Fed. R. Civ. Pro. 23. Rather than dismiss a purported *pro se* class action outright, courts construe the pleadings as individual claims brought by multiple plaintiffs. *Id.* That said, the Court cannot maintain a case with parties that have not signed a pleading or otherwise provided their contact information. *See Duan v. U.S. Citizenship & Immigr. Servs.*, No. 22-CV-1538

---

Giambrone; Lynne Simmons; Mary Weiss; Patricia I Kelley; Patti Serrao; Rong Liu; Steven Schwartzberg; and Tina Ryan.

(HG), 2022 WL 1793216, at *1 (E.D.N.Y. June 1, 2022); *Ortiz-Diaz v. Soc. Sec.*, No. 17-CV-7532 (WFK) (LB), 2018 WL 791256, at *2 (E.D.N.Y. Feb. 7, 2018); *see also* Fed. R. Civ. Pro. 11(a). As such, the Court construes the letters, affirmations, declarations, and pleadings as filed in support as an action brought by the individual Plaintiffs that have provided their contact information. The individuals that have not provided the necessary information to participate in this matter are hereby stricken from the docket.[5]

A.    Preliminary Injunction

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Though the injunction "is one of the most drastic tools in the arsenal of judicial remedies," the "district court has wide discretion in determining whether to grant a preliminary injunction." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (citations omitted).[6]

"The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits." *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34 (2d Cir. 1995). For prohibitory injunctions, the moving party must establish by a preponderance of the evidence the following four elements: (1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation; (3) the balance of the hardships tips toward the moving party; and (4) the public interest would

---

[5] *See supra* Note 3.

[6] On a motion for a preliminary injunction a district court's legal rulings are reviewed de novo and its ultimate denial of a preliminary injunction for abuse of discretion. *McCreary Cty. v. Am. Civil Liberties Union of Ky.*, 545 U.S. 844, 867 (2005); *Almontaser v. N.Y.C. Dep't of Educ.*, 519 F.3d 505, 508 (2d Cir. 2008). "A district court abuses its discretion when it rests its decision on a clearly erroneous finding of fact or makes an error of law." *Almontaser*, 519 F.3d at 508.

not be disserved by issuance of an injunction. *See Monserrate v. New York State Senate*, 599 F.3d 148, 154 (2d Cir. 2010); *Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010); *Home It, Inc. v. Wen*, No. 19-CV-7070 (MKB) (VMS), 2020 WL 353098, at *3 (E.D.N.Y. Jan. 21, 2020) (J. Chen).

Where plaintiffs are "challenging governmental action taken in the public interest pursuant to a statutory or regulatory scheme," however, they "cannot rely on the fair ground for litigation alternative" for the second element, and instead "must establish a likelihood of success on the merits." *Monserrate*, 599 F.3d at 154. Moreover, a court may enter a mandatory preliminary injunction—an injunction that "alter[s] the status quo by commanding some positive act," *Tom Doherty Assocs., Inc.*, 60 F.3d at 34, "only if it determines that, in addition to demonstrating irreparable harm, the moving party has shown a 'clear' or 'substantial' likelihood of success on the merits." *Mastrovincenzo v. City of New York*, 435 F. 3d 78, 89 (2d Cir. 2006) (citation omitted).

Thus, because Plaintiffs challenge governmental action taken in the public interest and seek a mandatory injunction—an order requiring a redo of the Primary–they must establish: (1) irreparable harm; (2) a "clear" or "substantial" likelihood of success on the merits; (3) the balance of the hardships tips in their favor; and (4) the public interest would not be disserved by issuance of the requested injunction. Plaintiffs have not met this heavy burden.[7]

---

[7] To the extent the Court makes any findings of fact in this Order, those findings are made solely for the purposes of resolving Plaintiffs' requests for injunctive relief. In making these factual findings, the Court may consider hearsay evidence. *Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010). Factual findings in this context are made pursuant to Rule 52(a)(2) of the Federal Rules of Civil Procedure. *See Home It, Inc.*, 2020 WL 353098, at *1. Certain facts, such as the number of enrolled voters, are "readily determined from sources whose accuracy cannot reasonably be questioned," and so the Court takes judicial notice of such facts for the purpose of both motions. *See La Vigne v. Costco Wholesale Corp.*, 284 F. Supp. 3d 496,

B.    Motion to Dismiss for Failure to State a Claim

As mentioned, *pro se* plaintiffs are warranted special consideration. They are not expected to meet the same standards required for formal pleadings drafted by lawyers. *Erickson*, 551 U.S. at 94. As such, the Court must look for the strongest arguments in the complaint. *Id.*; *Sealed*, 537 F.3d at 191–93. If the Court finds any possibility that "a valid claim might be stated," the Court must give the *pro se* plaintiff an opportunity to amend the complaint. *Cuoco*, 222 F.3d at 112. Even *pro se* Plaintiffs must comply with the Federal Rules of Civil Procedure, including Rule 8. *Morrison v. Shneur*, No. 21-CV-2096 (RPK) (LB), 2021 WL 4949028, at *2 (E.D.N.Y. Oct. 25, 2021) (citing *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019)).

Defendants have moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (NYS Mot. at 12). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court is charged with "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Trisvan v. Annucci*, 284 F. Supp. 3d 288, 295 (E.D.N.Y. 2018) (emphasis added) (quoting *Concord Assoc's, L.P. v. Entm't Prop. Trust*, 817 F.3d 46, 52 (2d Cir. 2016) (citations

---

504 (S.D.N.Y. 2018), *aff'd*, 772 F. App'x 4 (2d Cir. 2019) (court may take judicial notice of matters of public record); *Adams v. Louis*, No. 15-CIV-2575 (AMD) (RLM), 2016 WL 816789, at *2 (E.D.N.Y. Feb. 29, 2016) (same). As Plaintiffs are *pro se*, the Court liberally construes Plaintiffs' pleadings and "interpret[s] them to raise the strongest arguments that they suggest." *Murawski*, 285 F. Supp. 3d at 695 (citing *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)). Additionally, when the Court considers Defendants' motions to dismiss, a different legal standard applies.

omitted)). Legal conclusions, labels, or implausible factual claims are not enough. *See Trisvan*, 284 F. Supp. 3d at 295; *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

II.  <u>Plaintiffs are Not Entitled to a Preliminary Injunction</u>

Plaintiffs have alleged a particularized injury but not likelihood of success on the merits. *See Murray v. Cuomo*, 460 F. Supp. 3d 430, 443 (S.D.N.Y. 2020) ("To be sure, the Second Circuit has made clear that alleged constitutional violations presumptively constitute irreparable harm" even though "there is no freestanding [constitutional] right to be a candidate in an election.") (citing *Bery v. City of New York*, 97 F.3d 689, 693–94 (2d Cir. 1996)); *Credico v. New York State Bd. of Elections*, No. 10-CV-4555 (RJD) (CLP), 2013 WL 3990784, at *9, (E.D.N.Y. Aug. 5, 2013) ("[T]he 'injury in fact' in an equal protection case is the denial of equal treatment resulting from the imposition of a barrier, not the ultimate ability to obtain benefits if that barrier is eliminated.") (citation omitted). In this Circuit, "the mere allegation of a constitutional violation" sufficiently "triggers a finding of irreparable injury," and the question of whether that injury is due to the infringement of a constitutional right bears instead on the likelihood of success on the merits analysis. *See Murray*, 460 F. Supp. 3d at 444–45. The Court therefore moves on to address the likelihood of success on the merits of Plaintiffs' judicial estoppel and constitutional claims.

A.  <u>Plaintiffs are Not Likely to Succeed on the Merits</u>

Plaintiffs make two, main, substantive arguments in support of their request for a new the Primary: first, that judicial estoppel required Defendants to hold a primary with a write-in option; and second, that NYEL violates the First and Fourteenth Amendments of

the Constitution.[8] (Compl. ¶¶ 2–7, 40, 46–47). As explained below, judicial estoppel is inappropriate here, and the statutes at issue are constitutional on their face and as applied.

### i.   Judicial Estoppel Does Not Apply

Judicial estoppel is an equitable doctrine that "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citations omitted); *accord Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, No. 14-CV-6544 (KAM) (GRB), 2019 WL 2330855, at *7 (E.D.N.Y. May 31, 2019) (quoting *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999)). A party must show the following elements to invoke judicial estoppel: "(1) a party's later position is clearly inconsistent with its earlier position; (2) the party's former position has been adopted in some way by the court in the earlier proceeding; and (3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *United States v. Swartz Fam. Tr.*, 67 F.4th 505, 519 (2d Cir. 2023) (quoting *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010)). Despite consideration of these

---

[8] Though Plaintiffs do not specify which Constitutional Amendments they bring their Constitutional claims under, voting rights cases typically fall under the gambit of the First and Fourteenth Amendments. *See Burdick v. Takushi*, 504 U.S. 428, 438 (1992) (citing *Bullock v. Carter*, 405 U.S. 134, 142 (1972)). Plaintiffs also refer to New York State and County Court proceedings, seemingly, in an attempt to argue for the interpretation of some form of right created by the PI Op. (*See*, Compl. at 23–26). However, the mentioned proceedings occurred for the review of NYSBOE's invalidation of petitions, and provided a forum where Plaintiffs could have raised their arguments of "forged" objections to Ms. Castronuova's petition. (*See* NYEL §16-102; PI Op. at 5, 8, 26). This Court is concerned not with the factual support for the invalidation of the petitions to ballot, but rather the constitutional muster of the statutory requirements of the petitions, and therefore will not address the Complaint's allegations concerning the State Court proceedings. (*Id.*); *see Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (absent a clear constitutional violation, a court cannot interfere with the determinations being made in state court).

elements, judicial estoppel cannot be distilled to a "mechanical rule." *Clark v. AII Acquisition, LLC*, 886 F.3d 261, 266 (2d Cir. 2018) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946)). Grounded in equity, judicial estoppel requires a fact-specific analysis and a balancing of equities. *See Clark*, 886 F.3d at 265; *see also New Hampshire v. Maine*, 532 U.S. at 751 ("Additional considerations may inform the doctrine's application in specific factual contexts.") Grant of judicial estoppel is a discretionary one and the Second Circuit has emphasized restraint. *See Adelphia Recovery Tr. v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014) ("Because the doctrine is primarily concerned with protecting the judicial process, relief is granted *only* when the risk of inconsistent results with its impact on judicial integrity is certain.") (quoting *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 397 (2d Cir.2011)) (emphasis added); *see also Am. Tech. Ceramics Corp.*, 2019 WL 2330855, at *7 (citations omitted) (this "rare remedy" is meant to be "limited" in use).

First, Plaintiffs' estoppel claims fail because the statements that Defendants made at the April 10 hearing were not inaccurate or inconsistent. Judicial estoppel requires "a true inconsistency between the statements in the two proceedings," such that the "statements or positions in question can[not] be reconciled in some way." *Avila v. Reliant Cap. Sols., LLC*, No. 18-CV-2718 (ADS) (ARL), 2018 WL 5982488, at *5 (E.D.N.Y. Nov. 14, 2018), *aff'd*, 771 F. App'x 46 (2d Cir. 2019) (citations omitted) (denying judicial estoppel where a party's prior position, that certain language provided safe harbor in one case, and subsequent position, disputing that language as applied to recurring charges, were not "fundamentally inconsistent" or "clearly contradictory.") (citations omitted). Here, Defendants did not lie to the Court or flip the switch about the possibility of a write-in,

contrary to Plaintiffs' claims. (*See, e.g.*, ECF No. 31 ¶ 6). Defendants indicated at the hearing that a write-in option was possible. (Tr. at 41:6–9, 62:6–8, 63:11–12). That was true. (Riley Decl. ¶¶ 2–9, 12). There remained two paths to access the Primary ballot as a write-in candidate. (Riley Decl. ¶ 2). As of the April 10 hearing, there were two other candidates with active petitions that would have also led to a write-in availability regardless of whether Ms. Castronuova's petition survived objections. (Riley Decl. ¶ 12). These paths were also available to Ms. Castronuova months beforehand. (Riley Decl. ¶ 8). Unfortunately for Plaintiffs, no petitions were successful. (Riley Decl. ¶¶ 12–13). The fact that Plaintiffs could not write Ms. Castronuova's name in on the ballot during the Primary is because no one, including Ms. Castronuova, successfully availed themselves of the procedures in place to challenge Mr. Sapraicone's nomination. (*Id.*). Defendants did not need to detail every deadline and aspect of the relevant statutes and procedures at the Hearing to avoid inconsistency. *See Maines v. Last Chance Funding, Inc.*, No. 17-CV-5453 (ADS) (ARL), 2018 WL 4558408, at *6 (E.D.N.Y. Sept. 21, 2018), *amended on other grounds*, 2018 WL 4610898 (E.D.N.Y. Sept. 25, 2018) (where a party's "nondisclosure had at most a 'de minimis effect'" on the prior proceeding, that nondisclosure was not so inconsistent to warrant judicial estoppel) (quoting *Clark*, 886 F.3d at 267). Ultimately, a write-in ballot at the Primary was never promised. Plaintiffs unfortunately committed the same logical fallacy that Ms. Castronuova did in her suit for the placement of her name on the ballot—they mistook the procedural avenues for obtaining a write-in ballot as guarantees. (*See* PI Op. at 19–20, 28).

Second, Plaintiffs' claims fail because—even assuming the Defendants promised a write-in, which they did not—the Court did not rely on that statement in the PI Opinion.

The Court's prior decision to deny injunctive relief was not "based on the assumption that there would be a primary ballot" where "voters would be able to vote in that election." (ECF No. 30 at 2). The Court reiterated the possibility of a write-in ballot in dicta to point to one of the many ways that Ms. Castronuova's First and Fourteenth Amendment interests were satisfied by presenting the myriad of options she could have pursued to run for Senate. (PI Op. at 2–6, 26, 29). When a Plaintiff does not utilize the due process available to them, the Court cannot step in and create new processes. *See Murawski v. Pataki*, 514 F. Supp. 2d 577, 586 (S.D.N.Y. 2007) ("The fact that plaintiff did not avail himself of the opportunity to challenge the State BOE's determination does not create a procedural due process violation.") (citing *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 468 (2d Cir. 2006)). Injunctive relief was ultimately denied because the *Castronuova* Plaintiffs were not entitled to it—the NYEL that prevented ballot access was constitutional. *See* Infra Discussion Part II.A.ii. As such, any perceived inconsistency between the statements made in the April 10 Hearing and those made now "introduce[ ] no risk of inconsistent court determinations . . . and thus poses little threat to judicial integrity." *New Hampshire v. Maine*, 532 U.S. at 750–51; *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 148 (2d Cir. 2005) (judicial estoppel was inappropriate where the court did not rely on a prior position to dispose of a claim that "would have been dismissed in any event.")

Third, Defendants have received no unfair advantage by making these statements. Far from an "intentional self-contradiction," Defendants spoke at the April 10 Hearing to assist the Court in understanding all the procedures available to Plaintiffs, regardless of whether Plaintiffs took advantage of them. (Tr. at 41:6–9, 62:6–8, 63:11–12); *compare*

*New Hampshire v. Maine*, 532 U.S. at 751, 755 (affirming a grant of judicial estoppel against a party that benefitted from one interpretation of a fixed boundary in one court proceeding that was later trying to offer a different interpretation of that fixed boundary in another court proceeding for a different advantage); *with Fuentes v. Jamaica Colosseum Mall*, No. 09-CV-3276 (NGG) (LB), 2012 WL 2872122, at *4 (E.D.N.Y. June 5, 2012), *adopted*, 2012 WL 2872119 (E.D.N.Y. July 12, 2012) (a party is "conferred no unfair advantage" where acceptance of the current position "does not create the perception that the . . . Court has been misled.") (citations omitted). The arguments that Defendants "derived an unfair advantage" from the comments made about the possibility of a write-in, or by omitting the details of deadlines or concurrent petitions still in play as of April 10, are "theoretical and speculative." *Ashmore v. CGI Grp., Inc.*, 923 F.3d 260, 279 (2d Cir. 2019) (reversing a grant of judicial estoppel where no unfair detriment was felt by the party arguing for estoppel, because their "changes of prevailing . . . were unaffected" by any inconsistencies); *c.f. Thomas v. JP Morgan Chase, N.A.*, No. 11-CV-3656 (JG) (RML), 2012 WL 2872164, at *8 (E.D.N.Y. July 11, 2012) (granting judicial estoppel where a party's "inconsistent positions have provided her with an unfair advantage since she has received the benefit of a discharge of her debts while still possessing the ability to recover on her claims in full.")

In sum, to estop Defendants from following NYEL on the basis that Plaintiffs' misunderstood the mechanics of preparing for the Primary would "risk[ ] doing inequity in the name of equity." *Ashmore*, 923 F.3d at 278 (quoting *Clark*, 886 F.3d at 266).

ii.   The Relevant NYEL Statutes, and Denial of Access to a Write-in, Do Not Violate Plaintiffs' First or Fourteenth Amendment Rights

Constitutional analyses of statutes start with an assessment of whether there is a constitutional right before assessing whether the statute unconstitutionally burdens or infringes that right. *See Tiraco v. New York State Bd. of Elections*, 963 F. Supp. 2d 184, 193–94 (E.D.N.Y. 2013); *see also Dekom v. New York*, No. 12-CV-1318 (JS) (ARL), 2013 WL 3095010, at *14 (E.D.N.Y. June 18, 2013), *aff'd*, 583 F. App'x 15 (2d Cir. 2014). In the context of voting rights cases, "the rigorousness of [the Court's] inquiry into the propriety of a state action depends upon the extent to which a challenged action burdens First and Fourteenth Amendment rights." *Monserrate*, 599 F.3d 148 at 155 (first citing *Burdick v. Takushi*, 504 U.S. 428, 432 (1992), and then citing *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). In conducting this analysis, the Court:

> [M]ust weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights.

*Burdick*, 504 U.S. at 434 (citations omitted). Accordingly, "if the burden imposed is less than severe and reasonably related to the important state interest, the Constitution is satisfied." *Monserrate*, 599 F.3d at 154–55.

To determine whether there has been a Due Process Clause violation, "it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Rivera-Powell*, 470 F.3d at 465 (2d Cir. 2006) (quoting *Zinermon v. Burch*, 494 U.S. 113, 126 (1990)). Finally, "[t]he Equal Protection Clause prohibits the government from denying any person within its jurisdiction the equal protection of the

laws, which is essentially a direction that all persons similarly situated should be treated alike." *Tiraco*, 963 F. Supp. 2d at 199 (citing *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citations omitted)). The Equal Protection Clause does not mandate that every person receive the same outcome from the application of the law. *Id.* Instead, plaintiffs are either protected from discrimination based on protected class status or protected from being "treated differently than someone who is *prima facie* identical in all relevant respects.'" *See Tiraco*, 963 F. Supp. 2d at 200 (citations omitted). These principles apply similarly to ballot access cases brought by candidates and voters' rights cases brought by constituents. *See Burdick*, 504 U.S. at 438 (citing *Bullock v. Carter*, 405 U.S. 134, 142 (1972)). The success of constitutional claims in this context hinge upon whether the statutory scheme itself affords equal and due processes before infringing upon First Amendment rights. *See Rivera-Powell*, 470 F.3d at 469–70 (after explaining "federal court intervention in garden variety election disputes is inappropriate," the Circuit held "that when a candidate raises a First Amendment challenge to his or her removal from the ballot based on the allegedly unauthorized application of an admittedly valid restriction, the state has satisfied the First Amendment if it has provided due process") (emphasis in original).

The Court denied injunctive relief in the *Castronuova* action because the statutory requirements that prevented Ms. Castronuova from ballot access do not violate the First or Fourteenth Amendments of the Constitution. (PI Op. at 18–29). The rights to ballot access or vote for a particular candidate are not absolute. *See Dekom*, 2013 WL 3095010, at *15; *see also Munro v. Socialist Workers Party*, 479 U.S. 189, 193, (1986) (citing *Storer v. Brown*, 415 U.S. 724, 730 (1974)). New York State, like any other state, is entitled to

make rules that limit access to the ballot, so long as they are reasonably related to the important purpose of maintaining fair and efficient elections. *Id.* Precedent—which this Court is required to follow, regardless of how "complex" or "convoluted" Plaintiffs claim it to be—has made clear that even more burdensome processes than the signature requirements in New York State are constitutional. (ECF No. 30 at 1; Riley Decl. ¶ 6; PI Op. at 18); *see, e.g.*, *Prestia v. O'Connor*, 178 F.3d 86, 89 (2d Cir. 1999); *Burdick*, 504 U.S. at 435, n. 3 (citations omitted); *Libertarian Party of Connecticut v. Lamont*, 977 F.3d 173, 179 (2d Cir. 2020) (citations omitted).

The Supreme Court in *Burdick* held that "if adequate ballot access is provided, it is constitutionally permissible for states to prohibit write-in voting altogether." *Prestia*, 178 F.3d at 88, n. 1 (citing *Burdick*, 504 U.S. at 438–40). In *Prestia*, the Court affirmed the denial of a preliminary injunction and dismissal of a plaintiff's complaint surrounding the invalidation of a write-in petition because it lacked sufficient signatures. 178 F.3d at 88. Our case is no different—the only reason there was no write-in option and no primary, is because the very same petitioning signature requirements were not met. *See id.* (citing NYEL § 6-164); *see also Queens Cnty. Republican Comm. ex rel. Maltese v. New York State Bd. of Elections*, 222 F. Supp. 2d 341, 344, 348–351 (E.D.N.Y. 2002) (denying a preliminary injunciton where one of the plaintiffs' petitions for a write-in pursuant to NYEL § 6-164 was invalidated due to an insufficient number of signatures).

The Court does not overlook the fact that it would have been difficult, if not impossible, for Ms. Castronuova to file her own petition for a write-in ballot in one day. (Tr. at 1; Riley Decl. ¶¶ 8–9; NYEL §§ 6-164, 6-158(4)). However, the statutory requirements and deadlines for filing such a petition were put in place long before then,

and Ms. Castronuova, or any other candidate, had much more than those few days to prepare the necessary petitions with the required number of signatures. (Riley Decl. ¶ 8 (NYEL "§ 6-164 provides that signatures may be gathered on an [OTB] petition starting . . . March 19, 2024.") The statutes outlining the processes for obtaining a write-in ballot are Constitutional, and unfortunately for Ms. Castronuova, she did not avail herself of the procedures in place to obtain that. (Riley Decl. ¶ 12). Her lack of successful petitions are not problems the Court can fix. Defendants have followed the statutes in place, and the statutes do not violate the Constitution. (Riley Decl. ¶¶ 11–13).

Defendants' interests are to have a timely and orderly election in November. (Riley Decl. ¶ 14; NYS Mot. at 13–14). To allow for a primary now would impede that important goal, and cause harm to millions of active, registered voters in New York State.[9] The Court has no doubt that Ms. Castronuova intends to run for Senate, and that she has garnered the support of the named Plaintiffs, but the State also has a legitimate interest in preventing "party raiding" or other forms of election manipulation. *See Burdick*, 504 U.S. at 440; *Anderson*, 460 U.S., at 789, n. 9; *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 219 (1986). Where a candidate incapable of or disinterested in winning is promoted to voters only as a means to detract votes from other, more serious candidates, the State's interest in having a focused election is impeded. *Id.* To order a new, write-in Primary without having met any of the statutory prerequisites for such an event would completely thwart the State's efforts. *See Gonsalves v. New York State Bd.*

---

[9] As of February 27, 2024, there were 11,924,143 active, registered voters in New York State. *See Enrollment by Senate District*, NEW YORK STATE BOARD OF ELECTIONS, https://elections.ny.gov/enrollment-senate-district (last visited Aug. 14, 2024).

*of Elections*, 974 F. Supp. 2d 191, 201 (E.D.N.Y. 2013) ("Taken to its logical extreme, plaintiffs' position would allow for a near-unlimited number of independent parties.")

      B.    <u>Balancing of the Equities Weighs Against<br>Holding an Unscheduled Primary</u>

Ms. Castronuova can still run for Senate and may campaign for voters throughout the State to write in her name and, potentially, elect her on November 5. (Riley Decl. ¶¶ 15–16; NYEL § 7-104). In addition, Ms. Castronuova's campaign may continue to promote support for that result. (*Id.*) As such, the harm felt by Ms. Castronuova and voters absent an injunction is minimal.

In stark contrast, the harm to Defendants and other voters if this Court were to order a new primary would be grave. *SAM Party of New York v. Kosinski*, 987 F.3d 267, 278 (2d Cir. 2021) (the interests of "some voters" in seeing inclusions on their ballots "does not outweigh the broader public interest in administrable elections, ensuring that parties enjoy a modicum of electoral support, and the conservation of taxpayer dollars.") Defendants rightfully claim an important interest in making sure the election can be held in a timely and orderly fashion. (Riley Decl. ¶ 14; NYS Mot. at 13–14). "Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections." *Burdick*, 504 U.S. at 433 (explaining the appropriateness of a flexible standard of review when assessing Hawaii's ban on write-in ballots due to the inherent burden the State's election planning necessarily places on voters). Should a redo of the Primary occur, Defendants risk delay and disorganization ahead of the November general election. (*See* Riley Decl. ¶ 14; NYS Mot. at 13–14). Where a state has provided opportunities to access the ballot by certain deadlines, "any burden on voters' freedom of choice and association is borne only by those who fail" to meet those deadlines. *Burdick*,

504 U.S. at 436. "To conclude otherwise might sacrifice the political stability of the system of the State, with profound consequences for the entire citizenry, merely in the interest of particular candidates and their supporters having instantaneous access to the ballot." *Id.* at 437 (quoting *Storer*, 415 U.S. at 735). The election process operates to "winnow out and finally reject all but the chosen candidates" rather than "provide a means of giving vent to short-range political goals, pique, or personal quarrels." *Id.* (citations omitted). The State's interest in providing a channel for votes to be cast through, by "focus[ing] the attention of voters upon contested races," is sufficient to overcome the burdens placed by a lack of write-in. *Burdick*, 504 U.S. at 439 (first citing *Munro*, 479 U.S. at 197, and then citing *Storer*, 415 U.S. at 735).

III.     <u>The Complaint and Amended Complaint are Dismissed for Failure to State a Claim</u>

Plaintiffs' claims are not only unlikely to succeed on the merits, but even taking all of the factual allegations in the Complaint as true, they have failed to state claims upon which relief could be granted. Much of the Complaint consists of claims that are not factual allegations at all, but baseless legal conclusions. (*See, e.g.* Compl. at "The representations by the [Defendants] induced reliance by This Court as to the propriety and constitutionality of the Republican Party Primary Elections process."); ECF No. 21 at 1 (Defendant's OTB "argument is maliciously dishonest[,] intentionally vague and evasive, demonstrating their intent to deceive."); ECF No. 19 at 6 ("Because of the Defendants' dishonesty, the publication of the Decision and Order created unconstitutional detrimental reliance on false guarantees of the electoral franchise that this Court guaranteed to all the world."); s*ee Trisvan*, 284 F. Supp. 3d at 295; *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Many of the statements asserted as facts are not plausible on their face,

because Plaintiffs misunderstand or mischaracterize the record. (*See, e.g.*, ECF No. 30 at 2 ("The Court held that New York laws were constitutional because they provided a means for us to vote for our desired candidate by writing her in."); ECF No. 31 at 1 ("Defendants checked with their clients, NYSRC and Ed Cox, and confirmed to the Court that their client agreed there would be a write-in option.")) Stripping away the legal conclusions and implausible allegations, the Complaint is left with the following assertions to be taken as true for the purpose of the motions to dismiss: Plaintiffs campaigned for Ms. Castronuova, Plaintiffs attempted to obtain ballot access for the Primary but were unsuccessful, Plaintiffs mistook the statements made at the April 10 Hearing and in the PI Opinion as promises for a write-in option at the Primary, there was no Primary held because it was uncontested, and Plaintiffs were unable to write  in Ms. Castronuova's name during the Primary. *See Gelb v. Bd. of Elections in City of New York*, 888 F. Supp. 509, 514 (S.D.N.Y. 1995). On those facts, Plaintiffs have not pled any meritorious claims.

This is not a case where NYBOE or NYS Defendants selectively or intentionally failed to follow NYEL in the administration of the Primary ballots. *Compare Gelb v. Bd. of Elections in City of New York*, 888 F. Supp. 509, 516 (S.D.N.Y. 1995) (First and Fourteenth Amendment claims survived a motion to dismiss where a *pro se* plaintiff "alleged that the 'errors and omissions' committed during the primary and general elections were intentional.") (citations omitted), *with Westchester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 618–621 (S.D.N.Y. 2015) (where plaintiffs alleged a political party had violate election laws to prevent voters from casting ballot for other candidates, First and Fourteenth Amendment claims were dismissed because plaintiffs failed to show intent by the government to selectively apply the law). Access to one's

name on the ballot or the ability to vote for a particular candidate are not absolute constitutional rights and may be qualified substantially by state regulations. *See Murawski*, 514 F. Supp. 2d at 585 (discussing *Molinari v. Powers*, 82 F. Supp. 2d 57, 69–71 (E.D.N.Y. 2000)) (granting in part and denying in part motions to dismiss); *see also Green Party v. New York State Bd. of Elections*, 389 F.3d 411, 419 (2d Cir. 2004); *Marchant v. New York City Bd. of Elections*, 815 F. Supp. 2d 568, 578 (E.D.N.Y. 2011) ("[P]laintiffs challenge the loss of their ability to vote for the candidate of their choice, which—unlike the right to vote—is not an absolute right.") The Supreme Court has made clear that there is also no right to a write-in ballot, meaning that States can go so far as eliminating the option for a write-in ballot entirely without providing any process. *See Burdick*, 504 U.S. at 441.

"Because Plaintiffs' substantive constitutional claims fail, their § 1983 conspiracy claim must also be dismissed." *Westchester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 626 (S.D.N.Y. 2015) (first citing *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009), and then citing *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir.1995)). Plaintiffs' requests to move for summary judgment and for additional hearings are denied as moot. (*See* ECF No. 19 at 2).

As Plaintiffs proceed *pro se*, the Court has considered giving another opportunity to amend the Complaint. However, because the deficiencies in the Complaint are not such that could be cured by amendment, the Court concludes that it would be futile to grant leave to amend. *See O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 69 (2d Cir. 2002) ("a district court may deny leave to amend the complaint if the amendment would be

futile"); *Burton v. United States*, No. 21-CV-6238 (LDH)(LB), 2022 WL 1093217, at *2 (E.D.N.Y. Apr. 12, 2022).

## **CONCLUSION**

     For the reasons set forth above, the Court denies Plaintiffs' requests for injunctive relief and dismisses the Complaint with prejudice.

SO ORDERED.

_____
RAMÓN E. REYES, JR.
United States District Judge

Dated: August 15, 2024
       Brooklyn, NY